```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF HAWAII
```

| | |
|---|---|
| KRISTY TANAKA, ) | Civ. No. 20-00205 SOM-RT |
| Plaintiff, ) | |
| ) | ORDER GRANTING MOTION TO |
| vs. ) | DISMISS |
| ) | |
| DEREK KAAUKAI, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**ORDER GRANTING MOTION TO DISMISS**

**I.      INTRODUCTION.**

On May 4, 2020, Plaintiff Kristy Tanaka, proceeding *pro se*, filed a Complaint, asserting that Defendant Derek Kaaukai, a Maui County Detective, had unlawfully searched her home and seized and then searched the contents of her cellular phone, in violation of the Fourth and Fifth Amendments to the Constitution. Kaaukai is being sued in his individual capacity under 42 U.S.C. § 1983.

On July 13, 2020, Kaaukai filed a motion to dismiss, arguing that he is not liable for acts of others, that the Complaint fails to allege a claim, and that, with respect to allegations pertaining to him, he has qualified immunity. *See* ECF No. 23. The court grants the motion but gives Tanaka leave to submit an Amended Complaint.

**II.     STANDARD.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is generally limited to the

contents of a complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.

2

1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**III.     BACKGROUND.**

Tanaka asserts that Kaaukai violated her constitutional rights by searching her home and seizing her phones without a valid warrant supported by probable cause, a claim that is actionable under 42 U.S.C. § 1983.  Tanaka concedes that Kaaukai did have search warrants permitting the challenged search and seizure, Nos. SW2020-0165, SW2020-0166, SW2020-0167, but she claims that the warrants were invalid.  Tanaka also alleges that an unidentified officer arrived at her home, dragged her out of bed, and handcuffed her while her home was searched.  She says that an officer told her she had to enter the passcode to her phones or be arrested.  Tanaka alleges that Kaaukai "repeated an accusation" by someone "who threatened to have [her] home raided and who claimed to have police officers in his back pocket."  *See* ECF No. 1, PageID #s 2-4.

Although Tanaka did not attach copies of the search warrants to her Complaint, this court nevertheless considers them on this motion to dismiss.  Tanaka refers extensively to them in her Complaint and they form the basis of her claim that her phone was seized pursuant to invalid warrants.  *See Ritchie*, 342 F.3d at 908.  Kaaukai attached the search warrants to his motion to dismiss.  Search Warrant Nos. SW2020-165 and SW2020-166 are actually a single search warrant signed by Judge Blaine J. Kobayashi on April 14, 2020.  This warrant allowed police to

search for an "Unknown brand cellular telephone being utilized by one Christopher Grindling" on his person or at his residence in Kahului, Maui. The object of the search was evidence relating to an alleged sexual assault and kidnapping. The search was not to be conducted between 10:00 p.m. and 6:00 a.m. *See* ECF No. 23-3, PageID #s 124-26.

The return of service for Search Warrant Nos. SW2020-165 and SW2020-166 indicates that the warrants were executed on April 16, 2020, at 6:23 a.m., and that the police seized the following:

1) A1532 model iPhone White lower left corner of bed or floor

2) iPhone silver A1633 clear case with sparkles same location as item #1

3) A1662 silver iPhone located to right of bed

4) A1633 silver iPhone located to right of bed

5) DVD Zosi surveillance system w/ power cord left side

6) Suspected marijuana in jar to right of bed

7) Hard drive under staircase Dell Inspiron

ECF No. 23-4, PageID # 129. There appears to be a page missing from this return of service, as the copy in the record does not include an officer's signature. Interpreting the facts in the

5

light most favorable to Tanaka, the court assumes that the return of service was signed by Kaaukai.

Tanaka appears to have lived at the address listed in the search warrant, as the address listed on her Complaint is identical to the address in the search warrant. Apparently, Tanaka's phone(s) were seized along with Grindling's phone(s), perhaps because the police could not tell which phone(s) belonged to Grindling and which phone(s) belonged to Tanaka.

The police then obtained a second warrant, signed by Judge Adrianne N. Heely on April 20, 2020. This warrant, No. SW 2020-0167, allowed police to search Tanaka's and Grindling's cellular phones, which the police were holding following the earlier search and seizure. *See* ECF No. 23-5, PageID #s 131-39. The return of service for this warrant indicates that data was extracted from the phones. This return of service was signed by Kaaukai.

**IV.     ANALYSIS.**

    **A.     Tanaka Is Only Asserting Claims Against Kaaukai in His Individual Capacity.**

The Complaint is silent as to whether it is asserting claims against Kaaukai in his individual and/or official capacities. However, the court does not read the Complaint as asserting official-capacity claims.

6

An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 860 (9th Cir. 2011) ("We acknowledge that § 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." (quotation marks and citation omitted)). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166. To the extent a plaintiff brings a claim against an officer of the Maui Police Department in his or her official capacity, such a claim is treated as a claim against the County of Maui. *See Hoe v. City & Cty. of Honolulu*, 2007 WL 1118288, at *5 (D. Haw. Apr. 12, 2007) ("This Court treats claims against municipalities, such as the City and County of Honolulu, and their respective police departments as claims against the municipalities."); *Pourny v. Maui Police Dep't, Cty. of Maui*, 127 F. Supp. 2d 1129, 1143 (D. Haw. 2000) (treating claims against the Maui Police Department for an officer's actions as claims against the County of Maui).

A municipality or other local government agency, such as the County of Maui, is not vicariously liable under § 1983 for its employee's actions. *See Connick v. Thompson*, 563 U.S. 51, 60

(2011). Instead, such liability under § 1983 may be established in one of three ways:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations and internal quotations omitted); *accord Hopper v. City of Pasco*, 241 F.3d 1067, 1083 (9th Cir. 2001). Tanaka does not allege that Kaaukai acted pursuant to a longstanding custom or practice, that Kaauikai had final policy-making authority, or that an official with final policy-making authority ratified Kaauikai's conduct. Unable to discern an official-capacity claim, this court deems the claims against Kaaukai to be asserted against him only in his individual capacity.

### B.  Kaaukai Is Not Liable For the Acts of Others.

Kaaukai, the only named Defendant, initially seeks dismissal of any claim arising out of acts that were not his. He

8

is the only named Defendant and is sued in his individual capacity.  That part of the motion is granted.  *See Ybarra v. Mee*, 2020 WL 4586864, at *5 (D. Haw. Aug. 10, 2020) (noting that there is no vicarious liability for claims asserted under § 1983 for acts of others; instead, supervisors are individually liable only for their personal involvement in a constitutional deprivation); *Young v. City of Menifee*, 2019 WL 3037926, at *6 (C.D. Cal. Apr. 5, 2019) ("the Individual County Defendants may only be liable for their own acts and omissions"); *Haase v. City of Sparks*, 2012 WL 607451, at *8 (D. Nev. Feb. 23, 2012) (no individual liability for a supervisor who played no role in the acts of others).  Accordingly, to the extent Tanaka complains that someone dragged her out of bed and handcuffed her and that someone threatened her with arrest if she failed to enter any passcode to a phone, those claims are dismissed given the absence of allegations that it was Kaaukai who committed those alleged acts.  Kaaukai is only liable for his own conduct; he is not liable for the acts of others absent some personal involvement in those acts.

Tanaka is given leave to file an Amended Complaint that either alleges that Kaaukai committed the alleged deeds or in some way directed or participated in them.  *See*, *e.g.*, ECF No. 28, PageID # 152 (indicating that Kaaukai demanded her phone passcode).  Tanaka may add Defendants to reflect the actual actor

9

for any claim, but of course she should be careful to assert only viable claims supported by facts.

### C. Tanaka Fails to Allege a Viable Claim Based on Her Allegation that Kaaukai Repeated a Threat About Using Officers at His Disposal.

Tanaka's Complaint alleges that "Kaaukai repeated an accusation of a Justin Likalt who threatened to have [my] home raided and who accclaimed [sic] to have police officers in his back pocket of which he would use their authority against me at his own disposal." ECF No. 1, PageID # 4. This allegation is too unclear for this court to understand what claim is being asserted against Kaaukai. For example, if Kaauikai allegedly said that he was authorized to direct officers to take action against her in the form of executing a duly issued search warrant, it is unclear why, if true, that is actionable. Accordingly, to the extent Tanaka intends her Complaint to be including any claim based on this allegation, such a claim is dismissed. Tanaka is given leave to file an Amended Complaint that clarifies the claim she is trying to make with respect to this statement and more clearly alleges the factual basis of such a claim.

> D. **Kaaukai Has Qualified Immunity With Respect to the Search of Tanaka's home and the Seizure and Search of Her Phone(s).**

Kaaukai seeks dismissal of Tanaka's claim that he searched her home and seized and searched the contents of her phone without a warrant supported by probable cause, arguing that he has qualified immunity with respect to that claim.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Qualified immunity provides government officials with breathing room to make reasonable mistakes in judgment, protecting them unless they are plainly incompetent or knowingly violate the law. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

"Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The issue of qualified immunity is therefore important to resolve "at the earliest possible stage in litigation." *Id.* at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

11

The Supreme Court has set forth a two-pronged analysis for determining whether qualified immunity applies. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). This court may analyze the two prongs in either order. *See Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

In one prong, the court considers whether the facts, "[t]aken in the light most favorable to the party asserting the injury[,] . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. Under this prong, this court must decide whether the facts make out a violation of a constitutional right. *Pearson*, 555 U.S. at 232.

Under the other prong, the court examines whether the right allegedly violated was clearly established at the time of the violation. *See id.*; *Saucier*, 533 U.S. at 201. The "clearly established" prong requires a determination of whether the right in question was clearly established in light of the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 201.

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation marks, alterations, and citations omitted).

The crucial question is whether Kaaukai could have reasonably (even if erroneously) believed that his conduct did not violate Tanaka's constitutional rights. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Whether a constitutional right was "clearly established . . . is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017).

In the context of alleged violations of constitutional rights involving a search or seizure pursuant to a warrant, a judge's decision to issue the warrant "is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt*, 565 U.S. at 546. Of course, "if it is obvious that no reasonably competent officer would have concluded that a warrant should issue," for example, when a search warrant is based on an affidavit so lacking in indicia of probable cause "as to render official belief in its existence entirely

unreasonable," qualified immunity would be lost. *Id.* at 547 (quotation marks and citation omitted).

In *Malley v Briggs*, 475 U.S. 335, 346 n.9 (1986), the Supreme Court explained that a judge is more qualified to make a probable cause determination than a police officer and that, when a judge mistakenly issues a warrant but does so within the range of professional competence of a judge, the officer cannot be held liable.

> But it is different if no officer of reasonable competence would have requested the warrant, i.e., his request is outside the range of the professional competence expected of an officer. If the [judge] issues the warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty. The officer then cannot excuse his own default by pointing to the greater incompetence of the [judge].

*Id.*

In the present case, there is no dispute that Kaaukai searched Tanaka's house and seized her phone pursuant to a state search warrant issued by Judge Blaine J. Kobayashi on April 14, 2020, in SW2020-165 and SW2020-166. This warrant authorized police to search the house in which Tanaka was living and to seize the cellular phone of another person believed to live there, Grindling. It appears that all the cellular phones in the house were seized, perhaps because the police could not tell

14

which phones belonged to Grindling. The contents of Tanaka's phone were then searched pursuant to a second state warrant issued by Judge Adrianne N. Heely, on April 20, 2020, in SW2020-167.

"In the context of a police officer obtaining a warrant, immunity will be lost only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Mills v. Graves*, 930 F.2d 729, 731 (9th Cir. 1991). While the Complaint alleges that the search warrants were not supported by probable cause, claiming that the police reports and affidavits supporting them were insufficient to support the probable cause determination, the Complaint lacks factual detail supporting that conclusory statement. There is no allegation relating to whether the issuance of any of the warrants fell outside the range of professional competence of judges. Nor does the Complaint point to anything indicating gross incompetence or neglect of duty on Kaaukai's part. Tanaka cannot proceed based only on her bald, unadorned conclusory allegation that the warrants were unsupported by probable cause. See *Iqbal*, 556 U.S at 678; *Twombly*, 550 U.S. at 555. Similarly, the argument in her Opposition that Kaaukai lied in his affidavit is insufficient to defeat the present motion, as she provides no facts supporting

15

that contention. The court cannot even tell what the alleged lies concerned. *See* ECF No. 28, PageID #s 151-52.

The first warrant states that it is based on "Proof by Affidavit" by Kaaukai that there is probable cause to search the residence for the cellular phone constituting evidence of sexual assault and kidnapping and that the judge is "satisfied that there is probable cause to believed the item so described will be present within the above described **residence and person** and that there are grounds for the issuance of the search warrant." *See* ECF No. 23-3, PageID #s 124-25. The second warrant similarly states that it is based on "Proof by Affidavit" by Kaaukai that there is probable cause to search the seized cellular phones constituting evidence of sexual assault and kidnapping, and that the judge is satisfied that probable cause supports the search. *See* ECF No. 23-3, PageID #s 131, 136-37. Tanaka's conclusory allegations that the search warrants were unsupported by probable cause are insufficient to defeat the present motion to dismiss. *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*, 95 F.3d at 926.

Similarly, Tanaka's allegation that the warrants were overbroad or stale is unpersuasive. The judges reviewed the warrant applications and determined that they were sufficiently narrow in scope and that the evidence sought was likely to be found in the places and things to be searched. Without more,

16

Tanaka's references to legal concepts untethered to specific facts is insufficient to defeat the present motion to dismiss.

Tanaka is given leave to file an Amended Complaint that alleges facts supporting a claim that the warrants were not supported by probable cause. In any such Amended Complaint, Tanaka should allege specific facts indicating that the state judges should have determined that the search warrant applications were not supported by probable cause, and/or Tanaka should allege facts indicating that Kaaukai knew or should have known not to apply for the warrants. In short, Tanaka should do more than simply assert without detail. The court realizes that, at this point, Tanaka may not have the actual warrant applications, and that not having that material may make it difficult for her to provide complete detail in an Amended Complaint. The court certainly does not expect a summary of all the proof that might be available if discovery had been conducted. But Tanaka's allegations need to provide more than is now in the record if she proposes to proceed in this case.

**V.      CONCLUSION.**

The court grants Kaaukai's motion to dismiss for the reasons stated above. Tanaka is given leave to file an Amended Complaint no later than September 23, 2020. If Tanaka fails to timely file such an Amended Complaint, the Clerk of Court is directed to automatically enter judgment in favor of Kaaukai. If

Tanaka timely files such an Amended Complaint, this case will proceed under that new pleading.  Future proceedings may include new motions relating to the Amended Complaint.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, August 28, 2020.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

*Tanaka v Kaaukai*, Civ. No. 20-00205 SOM-RT; ORDER GRANTING MOTION TO DISMISS.