IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KRISTY TANAKA, | ) | Civ. No. 20-00205 SOM-RT |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART MOTION TO |
| vs. | ) | DISMISS AMENDED COMPLAINT |
| | ) | |
| DEREK KAAUKAI, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS AMENDED COMPLAINT**

**I.        INTRODUCTION.**

On September 3, 2020, Plaintiff Kristy Tanaka,
proceeding *pro se*, filed an Amended Complaint, asserting that
Defendant Derek Kaaukai, a Maui County Detective, had unlawfully
searched her home and seized and then searched the contents of
her cellular phone.  The court views the claims as being brought
under 42 U.S.C. § 1983 for alleged Fourth and Fifth Amendment
violations.  Tanaka is suing Kaaukai in both his individual and
official capacities

On September 17, 2020, Kaaukai filed a motion to
dismiss, arguing that he is not liable for the acts of others,
that the Complaint fails to state a claim, and that, with respect
to allegations pertaining to him, he has qualified immunity.  *See*
ECF No. 35-1.  The court grants the motion in part and denies it
in part without a hearing pursuant to Local Rule 7.1(c).  The
court dismisses the official capacity claims, claims seeking to

hold Kaaukai liable for the acts of others, and claims of police harassment that do not rise to the level of a Fourth Amendment violation.  However, the court allows the individual capacity Fourth and Fifth Amendment claims under § 1983 to proceed.

II.        **STANDARD.**

This court set forth the standard governing motions to dismiss in its order of August 28, 2020.  *See* ECF No. 33, PageID #s 169-171.  That standard is incorporated by reference.

III.       **BACKGROUND.**

Tanaka's Amended Complaint lacks some of the factual detail of the original Complaint that gives the case context. Each version of a complaint must stand on its own, because a new version supersedes the prior version.  When this court dismissed the original Complaint, the court understood the case to be arising out of Kaaukai's execution of two search warrants.  *See* ECF No. 33, PageID # 172.  In the Amended Complaint, Tanaka alleges that an unidentified officer dragged her out of bed, pointed a gun at her head, and handcuffed her while her home was searched.  She says that Kaaukai told her she had to enter the passcode to her phones without providing her with her *Miranda* rights.  *See* ECF No. 34, PageID # 188.

This court discussed the search warrants at issue in its order of August 28, 2020:

Search Warrant Nos. SW2020-165 and SW2020-166 are actually a single search warrant signed by Judge Blaine J. Kobayashi on April 14, 2020. This warrant allowed police to search for an "Unknown brand cellular telephone being utilized by one Christopher Grindling" on his person or at his residence in Kahului, Maui. The object of the search was evidence relating to an alleged sexual assault and kidnapping. The search was not to be conducted between 10:00 p.m. and 6:00 a.m. *See* ECF No. 23-3, PageID #s 124-26.

The return of service for Search Warrant Nos. SW2020-165 and SW2020-166 indicates that the warrants were executed on April 16, 2020, at 6:23 a.m., and that the police seized the following:

1) A1532 model iPhone White lower left corner of bed or floor

2) iPhone silver A1633 clear case with sparkles same location as item #1

3) A1662 silver iPhone located to right of bed

4) A1633 silver iPhone located to right of bed

5) DVD Zosi surveillance system w/ power cord left side

6) Suspected marijuana in jar to right of bed

3

       7)   Hard drive under staircase
             Dell Inspiron

ECF No. 23-4, PageID # 129.  There appears to
be a page missing from this return of
service, as the copy in the record does not
include an officer's signature.  Interpreting
the facts in the light most favorable to
Tanaka, the court assumes that the return of
service was signed by Kaaukai.

     Tanaka appears to have lived at the
address listed in the search warrant, as the
address listed on her Complaint is identical
to the address in the search warrant.
Apparently, Tanaka's phone(s) were seized
along with Grindling's phone(s), perhaps
because the police could not tell which
phone(s) belonged to Grindling and which
phone(s) belonged to Tanaka.

     The police then obtained a second
warrant, signed by Judge Adrianne N. Heely on
April 20, 2020.  This warrant, No. SW 2020-
0167, allowed police to search Tanaka's and
Grindling's cellular phones, which the police
were holding following the earlier search and
seizure.  *See* ECF No. 23-5, PageID #s 131-39.
The return of service for this warrant
indicates that data was extracted from the
phones.  This return of service was signed by
Kaaukai.

ECF No. 33, PageID #s 172-74.

     The Amended Complaint alleges that Kaaukai lied in the

search warrant applications.  Tanaka alleges that she was told by

the alleged victim that no sexual assault or kidnapping occurred.

*Id.*, PageID # 187.  Accordingly, Kaaukai deduces that Kaaukai

must have lied in the search warrant applications.

4

The Amended Complaint further alleges that Kaaukai continues to harass Tanaka by staking out her home, instructing officers to perform traffic stops of her, and threatening her friends and families with trumped-up charges if they refuse to make false charges against her.  *Id.*, PageID # 188.

**IV.      ANALYSIS.**

> **A.   The Claim Against Kaaukai in His Official Capacity is Dismissed.**

The Amended Complaint asserts an official-capacity claim against Kaaukai.  Tanaka argues that Maui County's longstanding practice of using warrants to conduct investigations is unconstitutional.  *See* ECF No. 34, PageID # 187.  The court dismisses this claim.

An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 860 (9th Cir. 2011) ("We acknowledge that § 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." (quotation marks and citation omitted)).  Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166.  To the extent a plaintiff

5

brings a claim against an officer of the Maui Police Department in his or her official capacity, such a claim is treated as a claim against the County of Maui.  *See Hoe v. City & Cty. of Honolulu*, 2007 WL 1118288, at *5 (D. Haw. Apr. 12, 2007) ("This Court treats claims against municipalities, such as the City and County of Honolulu, and their respective police departments as claims against the municipalities."); *Pourny v. Maui Police Dep't, Cty. of Maui*, 127 F. Supp. 2d 1129, 1143 (D. Haw. 2000) (treating claims against the Maui Police Department for an officer's actions as claims against the County of Maui).

A municipality or other local government agency, such as the County of Maui, is not vicariously liable under § 1983 for its employee's actions.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Instead, such liability under § 1983 may be established in one of three ways:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy.  Whether a particular official has final policy-making authority is a question of state law.  Third, the

> plaintiff may prove that an official with
> final policy-making authority ratified a
> subordinate's unconstitutional decision or
> action and the basis for it.

*Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)

(citations and internal quotations omitted); *accord Hopper v.*

*City of Pasco*, 241 F.3d 1067, 1083 (9th Cir. 2001).  Tanaka does

not allege that Kaaukai had final policy-making authority or that

an official with final policy-making authority ratified Kaaukai's

conduct.  Rather, she alleges that Kaaukai acted pursuant to a

longstanding custom or practice of using warrants to search for

evidence of a crime and that the use of warrants is

unconstitutional.  This court dismisses this claim for failure to

assert a claim.

> The Fourth Amendment states:
>
> The right of the people to be secure in their
> persons, houses, papers, and effects, against
> unreasonable searches and seizures, shall not
> be violated, and no Warrants shall issue, but
> upon probable cause, supported by Oath or
> affirmation, and particularly describing the
> place to be searched, and the persons or
> things to be seized.

Ordinarily, the reasonableness of a search for Fourth Amendment

purposes depends on governmental compliance with the warrant

requirement, which requires law enforcement officials to

demonstrate "probable cause" to a neutral judge, convincing that

7

judge to provide formal authorization to proceed with a search by issuance of a particularized warrant.  *See United States v. Kincade*, 379 F.3d 813, 822 (9th Cir. 2004).  Compliance with the warrant requirement to conduct searches is not unconstitutional.  Accordingly, the official-capacity claim based on Maui County's use of warrants to search for evidence is dismissed.

### B.   Kaaukai Is Not Liable For the Acts of Others.

Kaaukai, the only named Defendant, seeks dismissal of any claim arising out of acts that were not his.  He is the only named Defendant.  That part of the motion is granted.  *See Ybarra v. Mee*, 2020 WL 4586864, at *5 (D. Haw. Aug. 10, 2020) (noting that there is no vicarious liability for claims asserted under § 1983 for acts of others; instead, supervisors are individually liable only for their personal involvement in a constitutional deprivation); *Young v. City of Menifee*, 2019 WL 3037926, at *6 (C.D. Cal. Apr. 5, 2019) ("the Individual County Defendants may only be liable for their own acts and omissions"); *Haase v. City of Sparks*, 2012 WL 607451, at *8 (D. Nev. Feb. 23, 2012) (no individual liability for a supervisor who played no role in the acts of others).  Accordingly, to the extent Tanaka complains that someone dragged her out of bed, pointed a gun at her head, and handcuffed her, that claim is dismissed given the absence of

allegations that it was Kaaukai who committed those alleged acts. Kaaukai is only liable for his own conduct; he is not liable for the acts of others absent some personal involvement in those acts.

The court declines to dismiss Tanaka's claim that she was improperly forced by Kaaukai to input the passcode for her phone(s). Kaaukai is incorrect in contending that the Amended Complaint fails to identify the officer who demanded the passcode. *See* ECF No. 34, PageID # 187 ("Only Derek Kaaukai's name was on the documents. He directed me to turn over the passwords to unlock my phone[.]").

### C. Tanaka Fails to Assert a Viable Claim Based on Harassment.

The Amended Complaint alleges that Kaaukai is harassing Tanaka by staking out her home, instructing officers to perform traffic stops of her, and threatening her friends and families with trumped-up charges if they refuse to make false charges against her. *Id.*, PageID # 188. Tanaka fails to identify any viable claim based on these facts, as police are allowed to stake out homes and conduct traffic stops so long as they comport with the Fourth Amendment. Here, Tanaka does not allege facts demonstrating that the stakeouts or traffic stops violate the Fourth Amendment. Additionally, Tanaka lacks standing to seek

compensation for friends and family who have allegedly been
threatened by Kaaukai.

The court is not saying that the alleged stakeouts,
traffic stops, and threats to others are irrelevant to this case.
Those alleged activities may be evidence of a bias or retaliatory
motive, which in turn may be relevant to Tanaka's remaining
claims.  What the court is saying is that the Amended Complaint
is insufficient to state a claim against Kaaukai based solely on
the alleged stakeouts, traffic stops, and threats.

> **D.    Kaaukai Fails to Demonstrate That He Has Qualified
> Immunity With Respect to Tanaka's Claim That He
> Lied in the Affidavits Supporting the Search
> Warrants.**

Kaaukai seeks dismissal of Tanaka's claim that he
searched her home and seized and searched the contents of her
phone without a warrant supported by probable cause.  Kaaukai
argues that he has qualified immunity with respect to that claim.
Kaaukai's argument misses the mark, as Tanaka is contending that
he lied in the search warrant applications such that Kaaukai knew
or should have known the search warrants were invalid.

Qualified immunity shields government officials
performing discretionary functions from liability for civil
damages "insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Qualified immunity provides government officials with breathing room to make reasonable mistakes in judgment, protecting them unless they are plainly incompetent or knowingly violate the law. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

"Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The issue of qualified immunity is therefore important to resolve "at the earliest possible stage in litigation." *Id.* at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

The Supreme Court has set forth a two-pronged analysis for determining whether qualified immunity applies. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). This court may analyze the two prongs in either order. *See Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand.").

In one prong, the court considers whether the facts, "[t]aken in the light most favorable to the party asserting the injury[,] . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. Under this prong, this court must decide whether the facts make out a violation of a constitutional right. *Pearson*, 555 U.S. at 232.

Under the other prong, the court examines whether the right allegedly violated was clearly established at the time of the violation. *See id.*; *Saucier*, 533 U.S. at 201. The "clearly established" prong requires a determination of whether the right in question was clearly established in light of the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 201.

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation marks, alterations, and citations omitted).

The crucial question is whether Kaaukai could have reasonably (even if erroneously) believed that his conduct did not violate Tanaka's constitutional rights. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Whether a constitutional right was "clearly established . . . is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017).

In the context of alleged violations of constitutional rights involving a search or seizure pursuant to a warrant, a judge's decision to issue the warrant "is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt*, 565 U.S. at 546.  In the present case, Kaaukai appears to have searched Tanaka's house and seized her phone pursuant to a state search warrant issued by Judge Blaine J. Kobayashi on April 14, 2020, in SW2020-165 and SW2020-166.  This warrant authorized police to search the house in which Tanaka was living and to seize the cellular phone of another person believed to live there, Grindling.  It appears that all the cellular phones in the house were seized, perhaps because the police could not tell which phones belonged to Grindling.  The contents of Tanaka's phone were then searched pursuant to a second state

warrant issued by Judge Adrianne N. Heely, on April 20, 2020, in SW2020-167.

Nevertheless, the fact that search warrants were issued does not end the analysis.  When an officer submits an affidavit supporting a search warrant application that contains facts the officer knows are false (or would have known were false had the officer not recklessly disregarded the truth) and the false facts are necessary to the finding of probably cause, the officer cannot be said to have acted in an objectively reasonable manner. The officer therefore loses the shield of qualified immunity. *See Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991), *overruled on other grounds in light of intervening law by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). *Accord Chism v. Washington State*, 661 F.3d 380, 393 (9th Cir. 2011) (holding that it is clearly established that officers who submit affidavits for a search warrant that contain statements they know or should know are false violate plaintiff's constitutional right not to be searched or arrested as a result of judicial deception; ruling that summary judgment on the ground of qualified immunity is not appropriate once a plaintiff makes out such a judicial deception claim).

14

Tanaka's Amended Complaint alleges that Kaaukai's affidavits in support of the search warrants contained facts that Kaaukai either knew (or should have known) were false.  Tanaka is unable to identify the exact statement(s) that were supposedly false, as she has not had access to copies of the warrant applications.  However, she deduces that such false statements must have been made.  Tanaka says she has been told by the alleged victim, Jenna Braden, that Grindling did not sexually assault or kidnap Braden.[1]  *See* ECF No. 34, PageID # 187. Although Tanaka attaches what appear to be iMessages between her and Braden, these messages do not indicate that Braden said that Kaaukai lied or anything else that might be relevant.  This court cannot tell who said what to whom in the messages.  Accordingly, the court is taking Tanaka's allegation that Braden told her that Braden had not been sexually assaulted or kidnapped at face value.  This, of course, does not mean that Braden did not tell Kaaukai or the court otherwise.  However, for purposes of a motion to dismiss, this court must interpret the facts in the

---

[1] Tanaka also argues that the warrant applications must have contained false information because the house and phones that were searched were not in existence at the time of the alleged assault and kidnapping.  This argument does not necessarily flow from those facts.  Police executing a search warrant may be authorized to search any place in which evidence of a crime may be found, even if those places were not in existence at the time of alleged crime.

light most favorable to Tanaka.  Accordingly, for purposes of
this motion, the court assumes that Braden did not tell law
enforcement or the court that she had been sexually assaulted and
kidnapped by Grindling and that an affidavit in support of the
search warrants stated otherwise.  That assumption is not
dispelled by Kaaukai on the present motion.

The court therefore denies Kaaukai's motion to dismiss,
to the extent it asserts entitlement to qualified immunity.  This
court is not, of course, ruling that Kaaukai does not have
qualified immunity.  Instead, this court is simply ruling that,
based on the allegations of judicial deception, Tanaka's claim
may proceed at this time.  Kaaukai's assertion of qualified
immunity may be the subject of another motion based on the actual
facts, rather than the allegations of the Amended Complaint.

The court notes that Kaaukai does not argue in his
motion that he has qualified immunity with respect to the claim
that he improperly forced Tanaka to input the passcode to her
phone without *Miranda* warnings.  That claim also remains for
adjudication.

## V.        CONCLUSION.

The court grants Kaaukai's motion to dismiss in part
and denies it in part.  Tanaka's individual capacity Fourth

Amendment claim for an illegal search and seizure and Fifth Amendment claim for being forced to provide police the passcode to her phone without *Miranda* warnings remain for adjudication. All other claims are dismissed.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 2, 2020.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge


*Tanaka v Kaaukai*, Civ. No. 20-00205 SOM-RT; ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT